HAZEL VIRGINIA SPRINGER

*v.*

DANA E. SPRINGER

*and*

DANA E. SPRINGER

*v.*

HAZEL VIRGINIA SPRINGER

(No. 11038)

Submitted September 15, 1959. Decided November 3, 1959.

No appearance for appellant.

*Wysong & Wysong, W. S. Wysong,* for appellee.

BROWNING, JUDGE:

This is an appeal by Dana E. Springer from a final decree of the Circuit Court of Webster County of May 27, 1958, entered in two equity causes that were consolidated, by which it was decreed that Dana E. Springer pay to his former wife, Hazel Springer, the sum of Seventy Dollars a month for alimony and support of an infant child to the date of the decree, and decreed a lien in favor of the wife for such sum against the proceeds of the sale of their property in a partition suit, which moneys were in the hands of a special commissioner.

Dana E. Springer will be hereinafter referred to as appellant, and his former wife, Hazel Springer Pugh, as appellee.

In March, 1955, appellee brought suit for divorce against the appellant in the Circuit Court of Webster County. The divorce was awarded as prayed for and the custody of a minor son was awarded to the appellee with alimony payments of $60.00 a month, plus $30.00 a month for the support and maintenance of a minor son of the parties. Shortly after the entry of the final decree, appellant filed a petition alleging fraud in the procurement of the divorce, and the decree was set aside and annulled. But on September 13, 1955, the original decree of June 2, 1955, was reinstated with certain modifications. The latter decree provides in part as follows:

" * * *

"It is now adjudged, ordered and decreed that the defendant do pay unto the plaintiff Hazel

Virginia Springer the sum of $70.00 per month (instead of $90.00 per month) the first payment of which shall be made on September 15th, 1955 and a like sum of $70.00 per month on the 15th day of each succeeding month until the further order of the Court.

" * * *

"It is further adjudged, ordered and decreed as follows: The Plaintiff shall have the entire income from the farm of 44 acres owned jointly by the parties, until Richard Lee Springer, son of the parties reaches the age of twenty one years.

"The plaintiff shall have and receive the entire income from the farm until said son reaches the age of twenty one years.

"The plaintiff shall have and keep the live stock on the farm and have the right to sell or use the increase thereof, and shall butcher such present hogs as she may need for the home and family consumption and she may sell all increase of cattle, sheep and hogs, the title to the present stock shall remain as it now is, the plaintiff and defendant shall have title to such stock as each may now own and the present ownership thereof shall not change, provided the son remains on the farm or until he reaches the age of twenty-one years."

It will be noted that there is no provision in this decree for the cessation of alimony payments upon the remarriage of the appellee.

On the 26th day of May, 1957, a notice was served upon the appellant, signed by the appellee, that on the 29th day of May, 1957, at 9:00 a.m., the appellee would move the Circuit Court of Webster County "for a rule and attachment against you, because of your contempt of said decree and your failure to pay said sums as so ordered therein", referring to the decree of September 13, 1955. The notice stated that the appellant was in arrears in such payments "from January 15th, 1956 to and including May 15, 1957, in the sum of $1,190.00."

An order was entered on May 29, 1957, requiring appellant "to answer the claim of the plaintiff" that he was in arrears as asserted in the notice. That order further required appellant to appear on the first day of the next regular term of that court and show cause, if he could, why he should not be adjudged in contempt of court.

The appellant appeared in response to the rule and, in his answer, denied that he was indebted to the appellee in any amount of money, and alleged that she had married one Murl Pugh on June 8, 1956. He further stated in his answer that the son Richard "left the parties' farm on December 15, 1956, and has not since returned, he now being in the United States Marine Corps." The answer further avers that after the entry of the final divorce decree, appellee took from the farm of the parties personal property belonging to appellant of the value of $1,247.90.

Appellee, in reply to appellant's answer, denied the taking of any personal property of the appellant, but did admit that she married Murl Pugh on the 8th of June, 1956, and that appellant had paid her $210.00 "on alimony". The replication further alleges that appellant had "never applied to this Court at any time since June 8, 1956, up to the present, for a finding by this Court that he should not pay said alimony accruing and in arrears by the decree of September 13th, 1955."

The matter was referred to a Special Commissioner in Chancery, who filed his report, dated December 26, 1957, on the first day of the January, 1958 term of court. In his report, the commissioner found appellant to be in arrears in payments to appellee from September 15, 1955, to January 1, 1958, or a total amount of $1,925.00; but further found that the appellee had taken from the farm personal property belonging to the appellant amounting in the aggregate to the sum of $211.00. Other items for which the appellant was given credit reduced the amount due the appellee at that time to $1,367.47. In the meantime, a partition suit between the parties

was proceeding to culmination and the special commissioner's report of sale was filed in the office of the Clerk of the Circuit Court of Webster County on October 1, 1957. That report disclosed that the farm was sold for the sum of $3,500.00 cash, the net proceeds of such sale being the sum of $3,150.00.

Prior to final settlement of these issues, one Arnold Luikart had filed a petition as intervener in the partition suit alleging an unpaid judgment in his favor against appellant in the sum of $82.50 with costs in the sum of $6.00, and in the final decree of May 27, 1958, the divorce suit and the partition suit were consolidated and all of the issues between the parties in both suits were adjudicated. The Luikart judgment was decreed to be a lien upon the appellant's one-half interest in the $3,150.00 realized from the sale of the farm, and the sum of $1,367.67 was decreed to be a valid and subsisting lien upon appellant's one-half interest in the proceeds of the sale, pursuant to the finding of the special commissioner of December 26, 1957.

After the appeal was granted by this Court, the appellant made no further appearances here either in person or by counsel, but these errors were assigned in the application for appeal:

1. The decree of May 27, 1958, is contrary to the law and the evidence.

2. The court erred in decreeing alimony payments to the appellee subsequent to June 8, 1956.

The appellee was represented by counsel and in brief and oral argument contends that the $70.00 payment required by the decree of September 13, 1955, is a continuing obligation of appellant until he has complied with the applicable provisions of Code, 48-2-15, as amended, relating to alimony, custody and maintenance of children. That section provides in part: "* * * and the court, or the judge thereof in vacation, may, from time to time afterward, on the petition of either of the parties, re-

vise or alter such decree concerning the maintenance of the parties, or either of them, and make a new decree concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice; * * *" That section has a similar provision relative to the maintenance of minor children. The appellee contends that the appellant has never filed a petition with the trial court requesting a change with reference to the original decree in any of these particulars. It is true that this Court held in *Nield* v. *Nield,* 126 W. Va. 430, 28 S. E. 2d 825, as follows: "It will be observed from the portion of the statute quoted that a court acts on a petition in modifying a former decree relative to the maintenance of children of divorced parents. The term petition, as related to equity procedure, connotes an application in writing addressed to a court or judge, stating facts and circumstances relied upon as a cause for judicial action, and containing a prayer for relief. * * *" See also *Harloe* v. *Harloe,* 129 W. Va. 1, 38 S. E. 2d 362. Cf. *State ex rel Betty Lou Warren* v. *William W. Roberts, Judge,* 144 W. Va. 741, decided at this term of Court. It is the view of this Court that there was at least substantial compliance with the applicable provisions of Code, 48-2-15, as amended, although no "petition" in the form that such a pleading usually assumes was ever filed by appellant. However, upon the issuance of the rule to show cause why he should not be held in contempt of court for failure to comply with the seventy dollar payment provided in the former decree, the trial court entered an order giving the appellant until the first day of the following term of court to answer and show cause why he was not in arrears and therefore not in contempt. In this opinion the orders, decrees and proceedings in the partition suit as well as the divorce suit have been reviewed for the purpose of showing the significance of the answer which the appellant filed. We consider the answer and the affirmative relief which it sought against the appellee, including the allegations as to the remarriage of the appellee

and the entry into the Marine Corps of the minor son, as sufficient to meet the requirements of the statute that a "petition" must be filed where either party seeks to have such a decree changed. This Court has not had occasion to pass upon the question of whether a man who has been required in a divorce decree to pay alimony to his wife without any provision in the decree relative to remarriage is *ipso facto* entitled to be relieved from such payments upon the filing of a petition with the Court alleging, and if necessary proving, the remarriage of his former wife to another person. In some jurisdictions the matter is controlled by statute but apparently some conflict exists in jurisdictions where there are no such statutes, as to the relief to which a husband is entitled under such circumstances. Suffice to say, upon the record before us, that we find no error in the finding of the chancellor that payments of alimony to the appellee should cease. However, it will be noted from the facts stated in this opinion that while the answer was filed on September 16, 1957, the final decree of May 27, 1958, requires the continuation of the sum allowed "for alimony and money for the support and education of Richard Lee Springer, the son of the parties" to cease only as of the date of that decree. This Court holds, upon the record before us, that it was error for the trial chancellor to continue the payments of alimony or support money beyond the date of the filing of the answer by the appellant alleging that prior to that time his former wife had remarried and that his son was no longer being supported by the appellee, but instead was in the Marine Corps.

By so holding, we do not mean to say that the Court, in a proper case, may not relate the cessation of alimony or support payments to a date other than the date of the filing of a "petition" for modification. In this regard it is to be observed that in the instant case the issues arising in the divorce suit and those arising in the partition suit are inseparable.

It follows that the final decree of the Circuit Court of

Webster County of May 27, 1958, will be affirmed in part and reversed in part and the cause remanded to that court for the entry of a final decree not in conflict with the views expressed in this opinion.

*Affirmed in part;*
*reversed in part;*
*remanded.*